CITY OF EMMETSBURG, appellant, v. ROBERT MULLEN and RUTH MULLEN, appellees.

No. 51288.

(Reported in 129 N.W.2d 677)

886

JULY 16, 1964.

Robert F. Culver, of Emmetsburg, for appellant.

M. W. H. Morling and Smith & Hanson, all of Emmetsburg, for appellees.

HAYS, J.—This is an equitable proceeding wherein the City of Emmetsburg, Iowa, seeks to enjoin the defendants from the use of a building erected by them on their land in said City as being in violation of the City Zoning Ordinance. The trial court denied the relief prayed and the City appeals. While various propositions are urged and argued as a basis for reversing and

for sustaining the judgment of the trial court, we think the issues simmer down to a single question of construction of the provisions of the zoning ordinance under consideration.

I. There is no dispute. as to the basic facts. Defendants own a tract of land 89⅔ feet by 363 feet in Block 3, Ormsby's First Addition to the City of Emmetsburg. In 1955 they erected thereon a dwelling, now occupied by them and their family, to which was attached a two-car garage. In 1956 the City adopted a zoning ordinance which placed this land in a district classified as a "Single-family Dwelling" area. In 1960 defendants were granted a permit by the City building inspector to erect on said tract a three-car garage, which building at the time of trial had been completed and was in use. At the time application was made to the City for a permit to build this building, the defendants fully informed the mayor of the City and the building inspector that this garage was to be used for the housing of two pickup trucks owned by defendants and used in the business of a construction contractor, and to house an automobile owned by defendant's daughter when she was home from college. They also were told that the building would be used for the storing, or housing, of tools used by defendants in their business, such as wheelbarrows, barrels, cement mixer, hand tools, etc. They were all of the size that could be handled by a single individual. The permit was issued and work was immediately begun on the construction thereof.

There is a dispute in the record concerning this building permit. It is claimed by the City that within a few days after granting the permit it was revoked by the council due to complaints made regarding the building. Defendants deny there was a revocation. In any event, it is clear there was discussion over this permit by the council and the defendants, but the building was completed. Whether this permit was or was not revoked does not appear to be material and we will devote no more time to that question.

II. The Zoning Ordinance is a full and comprehensive coverage of the City. It defines various terms used therein, among them being:

"(1) Accessory Building: A subordinate building or a por-

tion of the main building the use of which is incidental to that part of the main building or to the use of the premises * * *.

"(12) Dwelling, Single-family: A building designed for or occupied exclusively by one family. * * *

"(19) Garage, Private: An accessory building housing not to exceed three (3) motor driven vehicles, the property of and for the use of the occupants of the lot on which the private garage is located."

Under the classification of Single-family Dwelling District, the ordinance provides that a building or premises within such an area may be used only for:

"(1) Single-family Dwellings. * * *

"(6) Accessory buildings which are not a part of the main building, including one private garage * * * when located not less than sixty (60) feet from the front lot line and not less than five (5) feet from any side street line, and accessory buildings which are a part of the main building, including a private garage * * *."

III. While the record is silent upon the exact location of this building upon the tract of land, it appears to be on land of sufficient area, and we assume that it complies with the terms of the ordinance. Since the provision as to accessory building as found under the "Single-family Dwelling" classification recognizes private garages, whether attached to or separate from the main building, as being legitimate buildings in such an area, and it appears without dispute that the building in question meets the definition of a "Private Garage" as set forth in the ordinance, we find that the building itself does not violate the ordinance.

The remaining question, and in fact the only question raised by any of the parties, is as to the use to which the building is being put.

The fact that it houses two pickup trucks used by the defendants cannot well be said to be an illegal use. The ordinance merely states that a private garage may be used to house not to exceed three motor driven vehicles, within which category the pickup trucks clearly come.

Does the use of the building for the housing or stor-

age of tools used by the owners of the premises conflict with and violate the provisions of the ordinance? There is considerable testimony in the record as to many occupants of single-family dwellings, scattered throughout the City, where the premises are being used for the parking of cars and equipment, including heavy equipment, owned by the occupant and used in his business. In several instances small businesses are being conducted thereon. While such proof is immaterial if it be found that the use is illegal, we think it is material and has a bearing upon determining just what construction or interpretation the city officials, and in fact city residents, place upon the provisions of the ordinance relative to accessory uses.

In 101 C. J. S., Zoning, section 176, it is said that "A use is 'accessory' when it is customarily incident to the main use, or when it is so necessary or so commonly to be expected in connection with the main use that it cannot be supposed that the ordinance was intended to prevent it." See Zahn v. Board of Adjustment of City of Newark, 45 N. J. Super. 516, 133 A.2d 358; City of Knoxville v. Brown, 195 Tenn. 501, 260 S.W.2d 264. Applying this test to the ordinance, in the light of the apparent sanctioned use of single-dwelling areas throughout the City, we are of the impression that such uses as are shown to exist in this record are deemed to be accessory uses to the premises as contemplated and sanctioned by the ordinance.

We find nothing in this record that shows a violation of the zoning ordinance of said City and hold that the trial court was correct in denying the relief prayed.—Affirmed.

All JUSTICES concur.